## Case No. 13,575.

### STURGIS v. The EDWARD.

[N. Y. Times, Feb. 5, 1863.]

District Court, D. New York. Feb. 5, 1863.

SALVAGE—CONTRACTS — EXCESSIVE COMPENSATION —SERVICE.

[1. Salvage contracts will be set aside not merely in case of fraud or extortion, but where the compensation is excessive.]

[2. A contract to pay $2,000 for towing a bark which had lost her rudder from her place of anchorage off the Highlands below Sandy Hook, where she was in no immediate danger, to New York, *held* to be so excessive, as to require the annulment of the contract. The court, however, considered it a salvage service, and allowed $1,000, being the amount which the master first offered to pay.]

[This was a libel by Russell Sturgis against the bark Edward to recover for salvage services performed under contract.]

Benedict, Burr & Benedict, for libelant.

Platt, Gerard & Buckley, for claimants.

BY THE COURT. On the morning of the 4th of November, 1861, the bark Edward was lying at anchor off the Highlands below Sandy Hook. She had been on a foreign voyage, and was bound into the port of New-York. In coming into the neighborhood of the Highlands, the wind blowing fresh to the eastward, she crossed a shoal, touched bottom, and carried away her rudder. breaking or pulling out the hanging gear attached to the stern-post. She had no means of steering, and it does not appear that those on board could repair or supply the loss. The wind had shifted to the westward, and was blowing off shore. She lay at anchor in three or four fathoms of water, in this helpless condition, but in no imminent danger. She had sent a small boat, with the mate, to Sandy Hook for aid, which was met by the libelant's tug, the Achilles. While the Edward lay in this condition, with a signal of distress flying, she was sighted by the Achilles several miles off, the latter being in that vicinity, in the course of her regular business, as a tug, looking for a tow. She bore down for the Edward, and on coming close to her, the captain of the Achilles inquired of the captain of the Edward if he wanted any assistance. He replied that he did, and inquired what he would charge to take him to New-York. After some conversation between the captains about the value of the Edward, in which the captain of the latter said she was worth $7,000 or $8,000, or that her owners had been offered that sum for her previous to her last voyage, the captain of the Achilles offered to take her to New-York for $3,000. The captain of the Edward offered $1,000. Finally, after some further conversation between them, the captain of the tug said he would not take the Edward up for less than $2,000. This sum the captain of the Edward agreed to pay, and upon these terms the hawser was put out, and the bark towed to New-York. During this conversation another steamtug was in sight, and the captain of the Achilles called the attention of the captain of the Edward to that fact, and told him if he did not want the Achilles he could take the other tug, to which the captain of the Edward made no reply. The towing was done in the usual way, only with a longer line than is common, owing to the absence of any steering apparatus on the bark. The time occupied in the towage was not longer than is usual in towing vessels by this tug from that point. The Achilles is a large and powerful tug, built and manned at great expense. The bark was afterward sold for $4,000.

Although the Edward was in no immediate danger, as already stated, yet it was hazardous for her to lie there in her helpless state. An easterly blow of any severity would have compelled her to pay out the whole length of her chain in order to hold her, and her pilot testifies that this would carry her stern into the surf. She was an old vessel, and would have probably gone to pieces, if she had thumped much on the bottom, in a rough sea like that which she would have encountered in the shoal water where she lay, with a strong easterly wind. Under these circumstances, with another tug in sight of her flag of distress, no doubt ready

to compete for the job, the captain of the Edward, with his crew and a Sandy Hook pilot on board, deliberately entered into the contract upon which this libel is founded, and by the express terms of which the tug was to receive $2,000 for the service rendered in towing the bark to New-York.

The sum stipulated to be paid was not only out of all proportion to the actual service rendered, but was greatly in excess of that demanded by any probable contingencies likely to be encountered in its performance. I have had some doubts whether this contract ought to be disturbed, for there does not appear to have been any fraud or extortion on the part of the captain of the tug; and it is somewhat questionable whether the court is called upon to relieve the owners of the Edward from the effect of the folly and stupidity of her master. But on the whole, the language of the decisions seems to hold not only that such contracts must be free from fraud and extortion, but also that the consideration should not be excessive. The consideration of this contract was certainly excessive, and yielding to the force of the decided cases, I hold that the agreement must be disregarded.

I think this was a case of salvage, and therefore to be liberally rewarded; and as the captain of the Edward volunteered to offer $1.000 for the service, and that service was successfully performed, I award that sum, with costs. Let a decree be entered accordingly.